<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.M. e*t al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>SUMMIT BOARD OF EDUCATION *et al.*,<br><br>  Defendants. | No. 23cv1633 (EP) (MAH)<br><br>**MEMORAMDUM ORDER** |

**PADIN, District Judge.**

  Plaintiffs J.M. and E.M., individually and on behalf of E.M., their minor child, bring this civil rights action against the Summit Board of Education (the "District"); the District's Director of Special Services Doreen Babis; and a District case manager Angelica DaSilva (collectively "Defendants"). D.E. 9 ("Amended Complaint" or "Am. Compl."). In the Amended Complaint, Plaintiffs allege eleven counts of civil rights violations: violations of the Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution against the District (Count I) and Babis and Jane Does 1-10 (Count II); violations of Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act ("ADA") against the District, and the New Jersey Law Against Discrimination ("NJLAD") against the District (Count III, IV, and V, respectively); a retaliation claim under 42 U.S.C. Section 1983 against all Defendants (Counts VI); a retaliation in violation of Division 504 of Title VI of the Civil Rights Act, the ADA, and NJLAD against the District (Count VII, VIII, and IX); an aiding and abetting claim in violation of NJLAD against Babis, DaSilva, and Jane Does 1-10 (Count X); and a violation of the New Jersey Civil Rights Act against all Defendants (Count XI). Am. Compl. ¶¶ 90-226.

During discovery, Defendants issued a subpoena *duces tecum* to Overlook Medical Center ("Overlook") requesting certain medical records pertaining to E.M., which Plaintiffs opposed. D.E. 38-1. The Hon. Michael A. Hammer, U.S.M.J, held a hearing on August 15, 2024 to resolve the dispute. ("Hearing" or "Hr'g."). Plaintiffs timely appeal Judge Hammer's decision overruling their objections. D.E.s 44 ("Order"), 46 ("Appeal"). Defendant opposes. D.E. 52 ("Opp'n"). Plaintiffs reply. D.E. 53 ("Reply").

The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons below, the Court will **AFFIRM** Judge Hammer's Order.

## I.     BACKGROUND[1]

In September 2019, E.M. was a second-grade student at the Washington School in Summit, New Jersey's public school district. Am. Compl. ¶ 24. On September 20, 2019, special education teacher Jill Plofsky took E.M. from her classroom for a "special" math lesson in the hallway for students struggling with math. *Id.* ¶ 31. The hallway had multiple distractions including caterpillars, which E.M. had been "fixated on for over a week." *Id.* According to Plofsky, E.M. stated "I want to die" at least twice while in this small group of students. *Id.* ¶ 33.

District Policy 5350 directs staff members "to be alert to a student who exhibits warning signs of self-destruction or who threatens or attempts suicide. Any such warning signs or the report of such warning signs from another student or staff member shall be taken with the utmost seriousness and reported immediately to the Principal or designee." *Id.* ¶ 27. District Policy 5350

---

[1] Except where otherwise noted, this section derives from the Amended Complaint's well-pled factual allegations, presumed to be true for the purposes of these motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

also directs that "[b]ased on the preliminary assessment, the parent(s) may be required to obtain medical or psychiatric services for the student." *Id.* ¶ 29.  District Policy 5350 further states that

> [i]n the event the student is required to obtain medical or psychiatric services, the parent(s) will be required to submit to the Superintendent a written medical clearance from a licensed medical professional, selected by the parent(s) and approved by the Superintendent, indicating the student has received medical services, does not present a risk to themselves or others, and is cleared to return to school.  The parent(s) shall be required to authorize their healthcare professional(s) to release medical information to the school district's healthcare professional, if requested.

*Id.* ¶ 30.

In accordance with the District's policy, Plofsky informed the Washington School's principal about E.M.'s comments.  *Id.* ¶ 33.  A few hours later, E.M. met with Angelica DaSilva, a school psychologist, and Nicole Allen, a special education supervisor, for a Suicide Risk Assessment.  *Id.* ¶¶ 35, 38.  Following the assessment, a Suicide Risk Assessment form (the "District Form") was completed.  *Id.* ¶ 39.  The District Form stated that E.M. was "referred for further screening," but did not explicitly require J.M. and E.M. (the "Parents") to obtain further medical or psychiatric services for E.M.  *Id.* ¶¶ 40-41, 43.

Nevertheless, the Parents immediately took E.M. to Overlook where E.M. met with Constance Booth, a licensed clinical social worker.   *Id.* ¶¶ 59-60.  Booth also consulted with a psychiatrist.  *Id.*  Following the evaluation of E.M., Overlook provided the Parents with a standardized, pre-printed form titled "Report to Schools of Assessment for Psychiatric Hospitalization" (the "Overlook Form").  *Id.* ¶ 63.  The Overlook Form stated, "[a]t the time of the evaluation, the recommendation for the referred student is: Hospitalization is not recommended.  Clinical recommendations are listed on Follow-Up Referral form and given to parents/guardians."  *Id.*  In addition, the Overlook form had a question—"Did the referring school provide collateral information"—to which Overlook stated "no."  *Id.*  The Parents allege that while

3

they did not provide Booth with a hard copy of the District Form, they informed her "of the substance of what DaSilva and Allen had advised E.M.'s mother." *Id.* ¶ 61.

On Monday, September 23, 2023, the Parents emailed the Overlook Form to the District and asked when E.M. would be permitted to return to school. *Id.* ¶ 64. That same day, Babis informed the Parents that the psychiatric clearance Overlook issued was not acceptable because it appeared "the information provided by the school was not shared with Overlook." *Id.* ¶ 65. To resolve this issue, Babis requested authorization for the District's physician to speak with Booth or for the Parents "provide written documentation confirming that the paperwork shared by the [D]istrict was reviewed and considered by the evaluator." *Id.* Despite the Parents' request to modify the Overlook Form to state that E.M. could return to school, Overlook refused. *Id.* ¶ 68.

Over the following weeks, the Parents and the District emailed back-and-forth regarding E.M.'s return to school. The District insisted that the Overlook Form was insufficient, and over several emails to the Parents, provided a host of options to facilitate E.M.'s return to school, including: allowing the District's physician to speak to the clinician at Overlook who assessed E.M.; having Overlook confirm that the District form was reviewed by Overlook; sharing the recommendations made by Overlook for follow up treatment along with documentation that the recommendations are being followed; and authorizing the District's physician to speak with E.M.'s current physician or therapist regarding the District's concerns for follow up care. *Id.* ¶¶ 66-67, 72, 73, 75.

The Parents also stood firm in their position. They asserted that the District's demands were not required under District Policy 5350; that the District was refusing to accept a standard letter from Overlook that stated that E.M. did not require hospitalization; and that the District was imposing these requirements after the fact (*i.e.,* requiring that the Parents had shared the District

4

Form with Overlook for the first time *after* the hospital visit). *Id.* ¶¶ 69, 71, 74, 76, 77. The Parents were resolute that the District is "not entitled to [E.M.'s] private medical information and [they] are not going to consent to the District having access to that information." *Id.* ¶ 71. Furthermore, the Parents maintained that E.M. was never suicidal and that her comments were indicative of her Autism Spectrum Disorder[2] and ADHD rather than a suicidal intent.[3] Am. Compl. ¶¶ 46, 53, 129-145, 158. To support their position, the Parents reference both Dr. McGuffog's diagnosis, *see e.g.*, ¶¶ 136-141, as well as Overlook's clinical determination that E.M. did not require hospitalization. *See, e.g.*, ¶¶ 74, 76, 82.

The Parents brought the pending lawsuit that alleges 11 counts of civil rights violations. On May 24, 2024, Defendants issued a subpoena *duces tecum* to the Custodian of Medical Records of Overlook for all documents related to E.M., including records of diagnosis, evaluation, treatment, parental correspondence, and correspondence with public or private schools (the "Overlook Records"). *See* D.E. 38-1, Exhibit A. The Parents objected to this subpoena. *Id.* at 2-4. Judge Hammer held a hearing on August 15, 2024 and overruled their objections. D.E.s 45-46. Plaintiffs timely appealed his decision to this Court on August 29, 2024. D.E. 46.

---

[2] In January 2019, the Parents arranged for E.M. to undergo a neuropsychological evaluation conducted by Carolyn McGuffog, Ph.D., Ed.D., which resulted in diagnoses of Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), and Generalized Anxiety Disorder. Am. Compl. ¶¶ 16-18. Dr. McGuffog's report noted that, among other behaviors, E.M. engaged in "odd language usage," which was "suggestive of 'canned' expressions." *Id.* ¶ 19. It appeared "that [E.M.] memorizes rather than creates sentences" and that "[s]he additionally seems to memorize social conventions . . .". *Id.* ¶ 20.

[3] In an email incorporated into the Amended Complaint, the Parents assert that the "main source" of their "ADHD easily distracted child[']s" frustration were the distractions in the hallway and the proximity of the caterpillars. Am. Compl. ¶ 64. "She was having a difficult time concentrating and this led to her frustration and the comment in question." *Id.; see also id.* ¶¶ 128, 139, 149, 200.

5

## II.     LEGAL STANDARD

The parties disagree over the appropriate standard of review. Plaintiffs argue that Judge Hammer's Order is subject to *de novo* review, Appeal at 8, while Defendants assert that this Court should review Judge Hammer's Order under the abuse of discretion standard. Opp'n at 4-8.

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court. 28 U.S.C. § 636(b)(1)(A). Upon objection from a party, the district court must review the Magistrate Judge's decision under a "clearly erroneous or contrary to law" standard when the matter is non-dispositive, and under a *de novo* standard when the matter is dispositive. *Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 395 (3d Cir. 2021) (internal citations omitted). "[A] motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *EEOC v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017).

Discovery orders are not normally dispositive. *Id.* This is true even where questions of privilege are involved. *Newsome v. Lawson*, 286 F. Supp. 3d 657, 662 (D. Del. 2017) (citing *Lebovitz v. Hartford Ins. Co. of the Midwest*, 918 F. Supp. 2d 422, 424 (W.D. Pa. 2013) and *Shulton, Inc. v. Optel Corp.*, 1987 WL 19491, at *6 (D.N.J. Nov. 4, 1987)). "A magistrate judge's ruling on a non-dispositive matter such as a discovery motion is entitled to great deference and is reversible only for abuse of discretion." *Eisai Co. v. Teva Pharms. USA, Inc.*, 629 F. Supp. 2d 416, 433-34 (D.N.J. 2009) (internal quotations omitted). "It follows that a 'magistrate judge's findings should not be rejected even if a reviewing court could have decided the issue differently.'" *Costa v. Cnty. of Burlington*, 584 F. Supp. 2d 681, 684 (D.N.J.1994) (quoting *Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 50)).

"A magistrate judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009); *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990). "A [ruling] is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). The appealing party bears the burden of establishing that the magistrate judge's decision was clearly erroneous or contrary to law. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

The Court must assess Judge Hammer's ruling that the Overlook Records are relevant and that Plaintiffs waived the psychotherapist-patient privilege. This Court reviews Judge Hammer's Order to determine if it was contrary to law.

### III.   ANALYSIS

"The scope of discovery in federal courts is generally governed by Federal Rule of Civil Procedure 26, which permits parties to 'obtain discovery regarding any *nonprivileged* matter that is *relevant* to any party's claim or defense[,] subject to court ordered limitations." *Costa*, 584 F. Supp. 2d 681, 684 (D.N.J. 2008) (quoting Fed. R. Civ. P. 26(b)(1)) (emphasis added). The right to broad discovery is "not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

The Parents argue that the Overlook records are irrelevant to the claims asserted in the Amended Complaint[4] and that the records are protected from disclosure by the federal

---

[4] The Parents do not raise this argument on appeal and therefore have waived it. *See Tabron v. Grace*, 6 F.3d 147, 153–54 n. 2 (3d Cir.1993) ("[A] party who fails to object before the district

psychotherapist-patient privilege as well as two privileges codified in New Jersey state law, N.J.S.A. §2A:84A-22.2 and N.J.S.A. §45:15BB-13.[5] D.E. 42 at 2 ("Joint Ltr."). Further, the Parents aver that Judge Hammer applied the wrong law when concluding they waived the privilege. Appeal at 8. The Defendants disagree, contending that E.M.'s mental health records are not only relevant to the claims and defenses asserted, but also that the Parents have waived the privilege by putting these records at issue, and that Judge Hammer applied the correct legal standard. Opp'n at 12.

### A.     The Psychotherapist-Patient Privilege Has Been Waived

The Parents contend that the records are protected by the psychotherapist-patient privilege. "'Confidential communications between a licensed psychotherapist and . . . patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.'" *Tavarez v. Twp. of Egg Harbor*, No. 09-6119, 2012 WL 13186197, at *3 (D.N.J. Aug. 3, 2012) (quoting *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996)). At the hearing, Judge Hammer relied on *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J. 2000) as persuasive authority to conclude that the Parents waived the psychotherapist-patient privilege by putting E.M.'s mental condition at issue. Hr'g. at 26-28. Not only do the Parents dispute this conclusion, but argue on

---

court to a magistrate judge's ruling on a non-dispositive pretrial matter waives that objection on appeal.").

[5] The Court agrees with Judge Hammer's determination that because jurisdiction in this case is predicated on a federal question, the federal psychotherapist-patient privilege controls. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) ("[F]or the resolution of the present discovery dispute, which concerns material relevant to both federal and state claims, [Federal] Rule [of Evidence] 501 directs us to apply federal privilege law."); *see also* Wright & Miller, 19 Fed. Prac. & Proc. § 4512 (3d ed.) (noting that it is "clear that federal privilege law will apply when both state and federal claims are present in the same action," particularly when a court exercises supplemental jurisdiction over state law claims under 28 U.S.C. § 1367). The Court therefore will not address the state law on privilege.

8

appeal that Judge Hammer erred by applying *Jackson* and not *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994). Reply at 10.

*1. It was not contrary to law for Judge Hammer to have relied on* Jackson

There are two main approaches to determine whether a party has waived the psychotherapist-patient privilege—the broad view and the narrow view. Under the broad view, the psychotherapist-patient privilege is waived when the plaintiff places their mental or emotional condition at issue. For example, in *Jackson*, after extensively considering both views, this Court adopted the broad view and held that a plaintiff placed her mental condition at issue by asserting claims other than a "garden-variety" anxiety claim. 193 F.R.D. at 220-25; s*ee also McKinney v. Delaware Cnty.*, No. 08-1054, 2009 WL 750181, at *4 (E.D. Pa. Mar. 20, 2009) (adopting a broad view of waiver and finding that plaintiff waived the psychotherapist-patient privilege when asserting a claim for emotional distress damages). In other words, "[a] party cannot inject [their] psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Jackson*, 193 F.R.D. at 223 (quoting *Santelli v. Electro–Motive*, 188 F.R.D. 306 (N.D. Ill. 1999)). In *Sarko*—the first district court case in this circuit to address this privilege post-*Jaffee*—the court justified its use of the broad view in part because "allowing a plaintiff 'to hide . . . behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice.'" *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997) (quoting *Premack v. J.C.J. Ogar, Inc.*, 148 F.R.D. 140, 145 (E.D. Pa. 1993)).

On the other hand, under the narrow view, a plaintiff waives the psychotherapist-patient privilege only when the privileged communication is placed directly at issue. *Tavarez*, 2012 WL 13186197, at *3. Courts adopting the narrow view have found that a party waives the

psychotherapist-patient privilege by taking an affirmative step, such as calling the therapist as a witness, testifying to the substance of the communications, or asserting a claim that relies on the findings or advice of the psychotherapist. *See Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225, 228 (D. Mass. 1997). The *Vanderbilt* court agreed with the *Sarko* court's concern that a plaintiff could utilize the privilege as both "a shield and a sword," but did not find that to be the case when the plaintiff did not put the substance of her conversations with her therapist at issue to further her claims. *Id.* at 229-30.

In this vein, the Parents argue that they have not waived the psychotherapist-patient privilege "because they never took an affirmative act to place the Overlook Documents in issue. The Parents will not be disclosing or describing the Overlook Documents in order to prove their claims against the Defendants." Reply at 4. Further, they assert the Amended Complaint puts E.M.'s autism, not her mental health, at issue. *Id.* at 12. Defendants respond that the Parents have put the Overlook Records at issue as the documentation dispute "dominated Plaintiffs' complaint" and these records lie at the center of nine of the eleven counts in the Amended Complaint. Joint Ltr. at 2-3. Defendants further contend that the Parents "will be relying upon the incomplete Overlook Document finding the E.M. did not require hospitalization—minus its clinical recommendations—to establish their claims." Opp'n at 14.

At the hearing, Judge Hammer adopted the broad view of waiver and found that the Parents "squarely place[d] Overlook's evaluation of E.M. at issue in this litigation. The [Parents] allege that Overlook's conclusion that E.M. did not require hospitalization coupled with Dr. McGuffog's evaluation should have been sufficient to allow E.M. to resume school." Hr'g. at 27:25-28:4. The Court does not find it contrary to law for Judge Hammer to have relied on *Jackson* and the several cases in this District which have followed suit and adopted the broad view of waiver. The Court

is unaware of any controlling authority precluding reliance on *Jackson* to determine waiver of the psychotherapist-patient privilege.

Moreover, the Court agrees with Judge Hammer, the *Jackson* court, and the several other courts in this District that have reliably adopted a broad view of waiver. The Court also agrees that E.M.'s mental condition has been repeatedly put as issue by the Parents.[6] Underlying the Amended Complaint is the Parents' contention that E.M.'s hallway statements were a product of her autism, rather than a suicidal ideation. To support their position, the Parents rely on the Overlook Form—and specifically the conclusion that E.M. did not require hospitalization—to argue to the District that it knew E.M. was not suicidal. *See* Am. Compl. ¶ 80 ("On September 20th, we obtained a letter from Overlook which stated that she did not require hospitalization. **Quite obviously, [E.M.] did not present a risk of immediate self-harm to the evaluating clinician. Further, [we] advised you on October 9th that '[E.M.] is fine and is not (and never was) suicidal.'"**) (emphasis added). By relying on Overlook's conclusion that E.M. was not suicidal—which was derived from the substantive communications between the clinician and E.M.—the Parents have put the Overlook records directly at issue. As Judge Hammer noted, the Parents "further allege that by not allowing E.M. to return to school at that point [*i.e.*, after the Parents sent the District the Overlook Form], the school district deprived plaintiff of [] [Free Access to Public Education], deprived her of procedural due process, and discriminated against her under NJLAD and the ADA." Hr'g at 28:4-8. In sum, the Parents have "manifested an unmistakable intent to inject [E.M.'s] *current symptoms and diagnoses* into the underlying

---

[6] Because the Court adopts *Jackson's* rule that "[a] party cannot inject his/her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues," the Court does not address the Parents' argument that the Amended Complaint puts E.M.'s autism at issue, rather than her mental condition. Reply at 12.

11

litigation." *Jackson*, 193 F.R.D. at 226 (emphasis added).  For these reasons, the Court finds that the Parents have waived the psychotherapist-patient privilege with respect to the Overlook Records.[7]

    2. *Even under* Rhone-Poulenc*, the Parents waived the privilege*

The Parents also argue that analyzing this matter under *Rhone-Poulenc* would have led Judge Hammer to a different conclusion:  that the Parents have not put the Overlook Records at issue because they "do not intend to interject any privileged communications with Overlook into this litigation to prove their claims against Defendants." Reply at 13.  *Rhone-Poulenc* explained, in the attorney-client privilege context,[8] when a party puts a communication in issue:

> There is authority for the proposition that a party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation. . . .  Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

32 F.3d at 863.

The Parents cite *Hucko v. City of Oak Forest*, 185 F.R.D. 526, 529 (N.D. Ill. 1999) to support their argument they have not placed the privileged records at issue.  Reviewing *Rhone-Poulenc*, *Hucko* concluded that "what is necessary for a waiver of the attorney-client privilege is not merely for the *client's state of mind to be in issue*, but rather for the *attorney's advice* to be in issue." *Id.* (emphasis original).  Applying *Hucko*'s reasoning to the present matter, for the Parents

---

[7] The Court recognizes that this issue primarily arises in cases where a plaintiff is alleging emotional distress damages, which is not the case here. Reply at 9.  Nevertheless, the Court does not find that a reason to conclude that the privilege has not been waived as the Plaintiffs put E.M.'s mental condition at issue, and rely on Overlook's determination that E.M. did not require hospitalization to support their allegations against Defendants.

[8] Plaintiffs contend that Judge Hammer should have applied *Rhone-Poulenc* to this case because the Supreme Court in *Jaffee* analogized the attorney-client privilege to the psychiatric-patient privilege.  Reply at 10 (citing *Adams v. Ardcor*, 196 F.R.D. 339 (E.D. Wis. 2000)).

12

to have waived the psychotherapist-privilege, they must have put the clinician's findings or diagnosis (the analog to a lawyer's advice) at issue.[9] The Court finds that the Parents have done exactly this by relying on Overlook's conclusion that E.M. did not require hospitalization to establish their claims. Namely, the Parents allege the District knew that E.M.'s statement in the hallway was a product of her autism and did not evidence a suicidal ideation—and therefore their refusal to allow E.M. return to school was a violation of their rights—in part by using the Overlook Form, which was produced following discussions between a clinician and Plaintiffs. *See* Am. Compl. ¶ 80. The Parents' argument that they did not waive the psychotherapist-patient privilege because they do not inject privileged *communications* with Overlook exemplifies why *Rhone-Poulenc*'s logic does not perfectly work in the psychotherapist-privilege context. The Court finds that utilizing the conclusions of a therapist following a privileged conversation is similar to "disclosing or describing an attorney client communication" for purposes of waiver. *Rhone-Poulenc*, 32 F. 3d at 863. Put simply, the Parents are using Overlook's determination that E.M. did not require hospitalization as a sword, yet seek to use the privilege to shield the communications made to reach that conclusion. As Judge Hammer explained:

> [A]llowing plaintiffs to rely solely on the clearance form provided by Overlook without providing [D]efendants the opportunity to understand the information available to Overlook in issuing that form and any other diagnoses or evaluations completed by Overlook would unduly prejudice the school district by depriving it of any opportunity to discover the full record of information that was available or not to Overlook in issuing the clearance letter.

---

[9] The Court recognizes The Parents' argument that they did not waive the psychotherapist-patient privilege because they do not inject privileged communications with Overlook to prove their claims exemplifies why *Rhone-Poulenc*'s logic in the attorney-client privilege context does not perfectly align with the psychotherapist-privilege context.

13

Hr'g at 28:12-20.  The Court agrees and accordingly concludes that even under *Rhone-Poulenc*, the Parents have put the Overlook Records in issue.[10]

## IV. CONCLUSION AND ORDER

For the reasons expressed above, **IT IS**

**ORDERED** that Plaintiff's Appeal, D.E. 46, is **DENIED**; and it is further

**ORDERED** that Judge Hammer's Order, D.E. 44, is **AFFIRMED**; and it is finally

**ORDERED** that Overlook Medical Center shall produce all records responsive to the subpoena *duces tecum* within 45 days of the signing of this Order.

Dated:  January 16, 2025

                                                                      Evelyn Padin, U.S.D.J.

---

[10] The Court is sympathetic to the Parents' concern of maintaining the privacy of E.M.'s medical information.  However, there are other means of protecting confidential information from disclosure, which they may seek from this Court.